IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

EUGENIA CASE,       )   CASE NO. 1:12-CV-1148
             )
       Plaintiff,   )
v.            )   MAGISTRATE JUDGE
             )   KENNETH S. McHARGH
             )
             )
COMMISSIONER OF SOCIAL   )   MEMORANDUM OPINION & ORDER
SECURITY ADMINISTRATION,   )
             )
       Defendant.   )

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 14). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Eugenia Case's application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I.  INTRODUCTION & PROCEDURAL HISTORY

On December 11, 2007, Eugenia Case ("Case") applied for a Period of Disability and Disability Insurance benefits.  (Tr. 16, 80).  Case alleged she became disabled on April 30, 2007, due to suffering from hip problems and the shortening of one leg. (Tr. 149, 197).  At the oral hearing Plaintiff made a request to amend her alleged onset date to July 1, 2008, which the ALJ granted. (Tr. 18, 42).

The Social Security Administration denied Case's application on initial review on June 6, 2008.  (Tr. 82-85).   Her application was also denied upon reconsideration on November 21, 2008.  (Tr. 86-88).  Thereafter, Case requested a hearing before an administrative law judge to

1

contest the denial of her application.  (Tr. 89-90).  The administration granted Plaintiff's request and scheduled a hearing.  (Tr. 93-94).

On November 4, 2010, Administrative Law Judge Mark Clayton (the "ALJ") convened a hearing to evaluate Plaintiff's application.  (Tr. 30-79).  Case, represented by counsel, appeared and testified before the ALJ.  (*Id*.).  A vocational expert (the "VE"), Gene Berkhammer, also appeared and testified at the proceeding.  (*Id*.).

On February 9, 2011, the ALJ issued an unfavorable decision finding Case was not disabled.  (Tr. 16-25).  After applying the five-step sequential analysis,[1] the ALJ determined Case retained the ability to perform work existing in significant numbers in the national economy.  (*Id*.).  Subsequently, Case requested review of the ALJ's decision from the Appeals Council of the Office of Disability Adjudication and Review.  (Tr. 11).  However, the council denied Case's request making the ALJ's decision the final decision of the Commissioner.  (Tr. 5-

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

7).  Plaintiff now seeks judicial review of the ALJ's decision.  Review is proper pursuant to 42 U.S.C. § 405(g).

## II.  PERSONAL INFORMATION

Case was born on October 7, 1977, and was 33 years old on the date of the hearing before the ALJ.  (Tr. 36, 80).  Accordingly, at all times, she was considered a "younger person" for Social Security purposes.  *See* 20 C.F.R. §§ 416.963(c), 404.1563(c).  Case completed a high school education in Romania. (Tr. 40).  Her past experience includes work as a hazardous material technician and a data entry worker.  (Tr. 71).

## III.  THE ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

2. The claimant has not engaged in substantial gainful activity since July 1, 2008, the amended alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease of the lumbo-sacral spine, status-post rod placement in the left femur, degenerative changes in the left hip with narrowing of hip joint and hip dysplasia.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except the claimant can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; the claimant can occasionally stoop, kneel, crouch, and crawl; and the claimant must be able to sit or stand at will.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on October 7, 1977 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

3

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2008, through the date of this decision.

(Tr. 18-25) (internal citations omitted).

## IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might

4

accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

Case takes issue with the ALJ's opinion on the ground that substantial evidence does not support the ALJ's finding that she can perform light work, and moreover, the record shows that she is not capable of performing sedentary work.  For the reasons that follow, the undersigned finds that Plaintiff's arguments lack merit.

### A.  Plaintiff's Ability to Perform Light Work

Plaintiff alleges that the ALJ finding her capable of performing light work is not supported by substantial evidence.  The ALJ concluded that Plaintiff can perform light work, except that she can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; and must be able to sit or stand at will. (Tr. 20).  The ALJ included these limitations in the hypothetical question which he relied upon for his step-five finding. (Tr. 72).  Responding to the controlling hypothetical question, the VE identified three sedentary jobs, which were addresser, charge account clerk, and food and

beverage order clerk. (Tr. 73).  The VE explained that generally, a sit-stand option reduces available work to the sedentary level. (*Id.*).  Plaintiff now argues that the VE's naming sedentary jobs does not comport with the ALJ's ultimate residual functional capacity ("RFC") of light work.

Although Plaintiff is correct in that the VE's testimony does not support a finding of light work, the ALJ's error on this ground is immaterial.  The VE identified that there were a significant number of jobs that Case could perform with the limitations set out in the ALJ's controlling hypothetical, the only difference being that they were at the sedentary rather than the light level.  Given that Plaintiff can perform sedentary work, as addressed below, the ALJ's error is harmless and remand on this issue would prove futile.  *See Kobetic v. Comm'r of Soc. Sec., 114 F. App'x 171, 173 (6th Cir. 2004) (quoting NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969))* ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.' ").

### B.  Plaintiff's Ability to Perform Sedentary Work

Plaintiff also maintains that she cannot perform sedentary work.  Plaintiff argues that (1) her treating sources imposed limitations that would preclude her from sedentary work, (2) other medical evidence shows she is disabled, (3) the ALJ failed to indicate the frequency with which she would need to alternate between sitting and standing, and (4) the ALJ selectively cited evidence that supported a finding of non-disability while omitting evidence that shows Plaintiff is disabled.

### 1.  Treating Sources

When assessing the medical evidence contained within a claimant's file, it is well-established that an ALJ must give special attention to the findings of the claimant's treating

source.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The treating source doctrine recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Under the Social Security Regulations, opinions from such physicians are entitled to controlling weight if the opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The treating source's opinions are not entitled to such deference, however, if they are unsupported by the medical data in the record, or are inconsistent with the other substantial evidence in the record.  *See Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (Table).  When the treating physician's opinions are not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion.  *Wilson*, 378 F.3d at 544.  These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, and the physician's specialization.  20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(6).  The regulations also advise the ALJ to provide "good reasons" for the weight accorded to the treating source's opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c)(2).

In the case *sub judice*, Plaintiff alleges that two of her treating physicians, Drs. William Petersilge and May Al-Abousi, imposed standing/walking, sitting, and additional workday break limitations, which show she cannot perform sedentary work.  Case also notes that Dr. Petersilge

stated that she was "disabled" and may only be capable of part-time work.  She maintains that the ALJ improperly rejected these opinions.

During December 2008, Dr. Petersilge, Plaintiff's orthopedist, consulted with Plaintiff and completed a narrative summary of his consultation as well as a physical functional capacity form.[2]  (Tr. 324, 311).  In his narrative, Dr. Petersilge explained that Plaintiff fractured her left femur around 2005. (Tr. 324).  Dr. Petersilge noted radiographs of Case's femur showed a non-locked intramedullary nail, a healed femoral shaft fracture, and some shortening of the left leg.  Though Case complained of low back pain, Dr. Petersilge noted that an MRI of her back demonstrated early degenerative change but no disc herniation.   Plaintiff also complained of buttocks pain and nerve irritation down her left leg with numbness.  The doctor opined that Case needed to be able to change positions frequently between sitting and standing.  He explained that "it may be possible for [Case] to only work part time within the limits of her discomfort."  Significantly, Dr. Petersilge added that "it would be reasonable for [Case] to get a work capacity evaluation performed to take a more objective look at her actual true functional capacities." (*Id.*).  Despite the recommendation for a more objective examination of Case, Dr. Petersilge completed a physical functional capacity form on which he stated that Plaintiff could stand or walk for two hours during an eight hour day, sit for two hours during the workday and only thirty minutes without interruption, and Plaintiff would need time to rest during the day in addition to a morning break, lunch, and afternoon break. (Tr. 311).   Though the form indicated that the

---

[2] The record contains only part of Dr. Petersilge's physical functional capacity form.  At the bottom of the form, there is a note that states "Over," which would indicate that there is a second side, but the reverse side of the form is missing.  The side of the form that is part of the record does not contain Dr. Petersilge's name or the date the form was completed.  Because Defendant does not challenge that Dr. Petersilge completed this form on December 22, 2008 or that the record is incomplete, the Court will not address these issues.

physician should identify the particular medical findings supporting each limitation, Dr. Petersilge left these parts of the form blank.

On November 17, 2010, Dr. Al-Abousi, Plaintiff's primary care physician, completed a residual functional capacity assessment. (Tr. 362-63).  Similar to Dr. Petersilge, Dr. Al-Abousi opined that Plaintiff could stand or walk for less than two hours and sit for about two hours in an eight hour day.  She based these limitations on pain and numbness in Plaintiff's left leg.  Dr. Al-Abousi also found that Plaintiff would need to shift positions from sitting or standing every fifteen minutes, must have an at will sit-stand option, would need to lie down at unpredictable intervals during the workday, and would miss work more than three times per month.

After reviewing the ALJ's opinion, the Court finds that the ALJ adequately followed the mandates of the treating source rule.  The ALJ discussed the opinions of Drs. Petersilge and Al-Abousi and concluded that the doctors' opinions were not entitled to controlling weight.  The ALJ stated that he did not completely reject these sources' opinions, but accorded both "little weight."  Taking into account the factors set out in the regulations, the ALJ gave good reasons for his decision. (Tr. 23).

First, the ALJ noted that Dr. Petersilge's opinion was inconsistent with evidence in the record.  Specifically, the ALJ pointed to objective medical findings by Dr. Dariush Saghafi from an April 2008 physical examination of Case.  The examination showed that Plaintiff had full strength in all extremities, no atrophy, normal senses, an abnormal gait but good stride in stocking feet, and no predisposition to falls. (Tr. 365-67).  Dr. Petersilge's RFC finding that Plaintiff cannot perform sedentary work does not comport with Dr. Saghafi's unremarkable physical examination of Plaintiff.  Furthermore, as the ALJ stated, Dr. Petersilge's RFC limitations contradicted the doctor's own treatment records.  The ALJ referenced Dr. Petersilge's

December 2008 and May 2009 records in which the doctor prescribed conservative treatment, including outpatient physical therapy and Darvocet, for Case's allegedly disabling symptoms. (Tr. 22, 324, 346).  The ALJ also pointed out that Dr. Petersilge recommended Case retrain for a sitting-standing job in May 2009. (Tr. 346).  While the determination of whether an individual can work belongs to the Commissioner, Dr. Petersilge's retraining recommendation conflicted with his December 2008 RFC that designated Plaintiff unable to perform any work. (Tr. 22, 346).

Plaintiff also maintains that the ALJ improperly discredited Dr. Petersilge's opinions that she may only be able to work part-time (Tr. 324) and that she is "disabled." (Tr. 345).  This argument is not well-taken.  The ALJ correctly noted that that the disability determination is reserved for the Commissioner.  *See* 20 C.F.R. § 404.1527(d)(1); SSR 96-5p, 1996 WL 374183 at *2.  Only *medical opinions* of treating sources are entitled to deference.  *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th Cir. 2010).  Opinions on issues such as whether the claimant is employable or disabled are not medical opinions, nor deserving of any particular weight.  *Id.*

Regarding Dr. Al-Abousi's opinions, the ALJ indicated that they were not entitled to controlling weight because the doctor was Plaintiff's family doctor, not an orthopedic specialist. The Social Security Regulations dictate that an ALJ may "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5).  However, this Regulation does not necessarily condone the complete rejection of a medical source simply because the medical advice offered exceeds his or her area of expertise.  *See Doud v. Comm'r of Soc. Sec.*, 314 F. Supp. 2d 680 (E.D. Mich. 2003) (ALJ erred by rejecting treating physician's opinion regarding

10

the claimant's mental state even though the physician was not a mental health specialist).  Here, the ALJ evaluated Dr. Al-Abousi's findings, and determined that they were only deserving of little weight because they contemplated matters beyond Dr. Al-Abousi's specialty.  The ALJ expressly indicated that he did not completely discard Dr. Al-Abousi's findings simply because she was not an orthopedic specialist.  The ALJ's decision to attribute little weight to Dr. Al-Abousi's opinion was appropriate, as the regulations advise the ALJ to consider a treating physician's specialty when considering how much weight to afford the opinion.  20 C.F.R. § 404.1527(c)(5); *see also Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001).

### 2.  Additional Medical Evidence

Case maintains that objective medical evidence shows she has on going pain that significantly affects her ability to sit, stand, or walk for long periods of time, and thus bars her from full-time work.  Plaintiff notes findings such as a decreased range of motion, decreased strength, and positive straight leg raises.  In addition, Plaintiff points to Dr. Patrick Hergenroeder, who opined that Plaintiff's pain was in part due to problems with her SI joint and he believed that treatment, including physical therapy, would not provide relief. (Tr. 278).

Plaintiff's contentions lack merit because she ignores the well-established statutory scheme governing disability claims, which requires the claimant to bear the burden of establishing his or her entitlement to benefits.  *See Matthews v. Eldridge*, 424 U.S. 319, 336 (1976); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).  Plaintiff has not cited to any medical sources imposing limitations that would prevent her from working based on the objective medical findings noted above.  Though Dr. Hergenroeder conjectured that Plaintiff's pain was due to SI joint instability or subluxation and that there was potentially little that could be done to ameliorate her hip problem, Plaintiff points to no limitations imposed by the doctor

11

based on these findings.   (Tr. 278).   In addition, following a physical examination, Dr. Hergenroeder found that Plaintiff had no weakness, normal reflexes, a normal range of motion in the left hip, and no nerve root tension signs. (*Id.*).

On review, it is the Court's responsibility to determine whether there is substantial evidence in the record to support the Commissioner's decision.  *Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405-06 (6th Cir. 2009)*.   Even if there is evidence supporting the opposite conclusion, the undersigned must defer to the ALJ's finding if it is supported by substantial evidence.  *Id.*   Here, Plaintiff cites evidence which may support a contrary finding; however, substantial evidence supports the ALJ's conclusion.  To support his finding, the ALJ relied on state agency non-examining reviewer Dr. Jerry McCloud, who opined that Plaintiff was capable of medium work and also found that she was able to sit for at least six hours during the workday. (Tr. 265-72).  In addition, Dr. Furey stated that the MRI of Plaintiff's lower spine did not show significant disk herniation or stenosis, and though there was a small bulge at L5-S1, there was no neurological compression. (Tr. 323).   Dr. Furey did not recommended limitations based on Plaintiff's alleged back pain, and further provided that Dr. Petersilge recommended conservative treatment, like exercise, for her hip. (Tr. 325).   Contrary to Plaintiff's allegations, Dr. Saghafi found full strength in Plaintiff's lower and upper extremities, normal senses, and a good stride. (Tr. 365-67).  The ALJ also noted that Plaintiff's daily activities did not support her alleged limitations or complaints of pain, recalling Plaintiff's testimony that she uses the stairs in her home, independently cares for her two young children, does not use an assistive device, and drove herself to the hearing. (Tr. 21, 37-40, 60, 56-57).  *See Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990)* (finding that an ALJ may consider the plaintiff's

household and social activities when evaluating complaints of pain).  Given that this, and other evidence, provides such support for the ALJ's decision, the undersigned must affirm.

### 3.  Sit-Stand Limitation

Case alleges the ALJ erred by failing to address the frequency with which she would require a change in positions under the sit-stand option included in the RFC.  Plaintiff maintains that the record shows she cannot remain sitting or standing for the period of time required for sedentary work.  Social Security Ruling 96-9p provides that "the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185, at *7.  To comply with the Ruling, the ALJ need not include increments of time to be spent in each position under an at will sit-stand option. *Perry v. Comm'r of Soc. Sec.*, 3:09-CV-1847, 2010 WL 7366775, at *4 (N.D. Ohio Sept. 27, 2010) (*citing Williams v. Astrue*, 2009 WL 2840497, at *10 (E.D. Mich. 2009)).  Here, the ALJ's RFC and hypothetical question posed to the VE identified the frequency at which Case would need to alternate between sitting and standing—"at will," meaning that Case could change positions as frequently as she required. (Tr. 72).  The VE identified three sedentary jobs that allowed for an at will sit-stand option.  Thus, the Court cannot find that the ALJ erred.

### 4.  The ALJ's Reliance on the Record

Plaintiff accuses the ALJ of improperly citing to portions of the record that support his RFC finding while ignoring others throughout his opinion.  It is generally recognized that an ALJ "may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Smith v. Comm'r of Soc. Sec.*, 2013 WL 943874, at *6 (N.D. Ohio Mar. 11, 2013) (citing *Goble v. Astrue*, 385 Fed. App'x. 588, 593 (7th Cir. 2010) (citation omitted)).  However, it is the ALJ's duty to resolve any inconsistencies in the evidence, and the

13

ALJ does not act improperly merely by resolving some inconsistencies unfavorably to a claimant's position. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).

In the present case, Plaintiff takes issue with the ALJ excluding from his analysis Dr. Furey's observation that she had difficulty heel-toe walking and Dr. Patrick McIntyre's notation of an antalgic gait. (Tr. 325, 380). Plaintiff maintains that these observations support her difficulty standing or walking. Plaintiff's argument is not well-taken. The ALJ expressly noted that Dr. Furey found Plaintiff had difficulty heel-toe walking. (Tr. 19). Though the ALJ did not reference Dr. McIntyre's observation, throughout his opinion, the ALJ specifically explained that Plaintiff's doctors found she had some difficulties walking due to the shortening of her left femur. The ALJ referred to Dr. Furey's finding that Plaintiff had a "slow deliberate gait" and Dr. Saghafi's reported antalgic gait. (Tr. 21). The ALJ weighed the evidence Plaintiff's cites against other evidence supporting Plaintiff's abilities to stand and walk. Dr. Saghafi reported no shuffling, no turning difficulties, and no predisposition to falls. (Tr. 20-21, 367). In addition, the ALJ pointed to Dr. Petersilge's notation that Case was walking much better once she had obtained shoe lifts and did she not use a supportive device. (Tr. 21, 346). Aside from Drs. Petersilge and Al-Aboussi, Plaintiff points to no physician imposing limitations on her ability to walk or stand. Furthermore, the ALJ did not fully reject Plaintiff's difficulty ambulating, as he limited her to only occasional use of ramps or stairs in the RFC. (Tr. 20). Regardless of any difficulties Plaintiff may have walking, she is capable of performing sedentary work, making any alleged error on this ground harmless.

Plaintiff fails to show that the ALJ simply accepted portions of the record evidence while carelessly rejecting others. Instead, the ALJ provided a reasoned basis for rejecting findings, and such reasons have support in the record. The undersigned acknowledges that while there may be

evidence supporting the Plaintiff's view, the Court must affirm the ALJ's decision where, as here, it is supported by substantial evidence, because there exists a "zone of choice within which the decisionmaker[] can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)*).

## VII.   DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge


Date: October 18, 2013.

15